# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA

-------------------------------------------------------------------X

DIANA CAMPUZANO
158 West 84th Street
New York, New York 10024

AVI ELISHIS
68 Westminster Avenue
Bergenfield, New Jersey 07621
and

GREGG SALZMAN
10 Tremblay Road
East Brunswick, New Jersey 08816

                Plaintiffs,

            -against-

JOSHUA AMBUSH
1726 Reisterstown Road, Suite 206
Baltimore, Maryland 21208

               Defendant.

-------------------------------------------------------------------X

Case no. 19-CV-421

**COMPLAINT**

      Plaintiffs, complaining of the defendant, by their attorneys, THE BERKMAN LAW

OFFICE, LLC, alleges for their complaint, upon information and belief, as follows:

## THE PARTIES

      1.    At all times mentioned herein, the plaintiff, DIANA CAMPUZANO

("CAMPUZANO"), is a natural person and is a citizen and resident of the City, State and County

of New York.

2.     At all times mentioned herein, the plaintiff, AVI ELISHIS ("ELISHIS"), is a natural person and is a citizen and resident of the State of New Jersey.

3.     At all times mentioned herein, the plaintiff, GREGG SALZMAN ("SALZMAN"), is a natural person and is a citizen and resident of the State of Florida.

4.     Upon information and belief, the defendant JOSHUA AMBUSH ("AMBUSH") is a natural person and is a citizen and resident of the State of Maryland.

5.     Upon information and belief, AMBUSH holds himself out as an attorney licensed to practice law before the United States District Court for the District of the District of Columbia, having Bar ID # MD27025 and having been admitted to practice before that court on June 2, 2003.

6.     Upon information and belief, the defendant AMBUSH was employed for a period of time by the AMERICAN CENTER FOR CIVIL JUSTICE, INC. ("ACCJ") is a not-for-profit corporation organized and existing under the laws of the State of New York. Plaintiffs do not know the exact dates of such employment, but in a complaint filed against him by the ACCJ in 2009, *American Center for Civil Justice v. Joshua M. Ambush,* 09-cv-233 (D.D.C) the ACCJ alleged that AMBUSH had worked for them for 13 years, meaning since 1996.

## THE UNDERLYING FACTS

7.     Plaintiffs were injured in a suicide bombing attack carried out by the terrorist group Hamas on September 4, 1997.

8.     Shortly after the attack, in or about December 1998, plaintiffs were approached on behalf of an organization called Raul Wallenberg Center for Civil Justice, Inc., to provide assistance and represent them trying to get compensation for their injuries.

9.      At some point, upon information and belief in or about 1999, Raul Wallenberg Center for Civil Justice, Inc. changed its name to the American Center for Civil Justice, Inc. ("ACCJ").

10.     On September 29, 2000 an attorney filed a complaint on plaintiffs' behalf, commencing an action against Iran and related defendants under the Foreign Sovereign Immunities Act ("FSIA"), claiming that Iran had sponsored the terrorist organization that carried out the attack in which plaintiffs were injured, *Campuzano, et al. v. Islamic Republic of Iran, et al.,* 00-cv-2328 (DDC) ("FSIA Action").

11.     The defendants defaulted in the FSIA Action and a default judgment hearing was held on January 6-9, 2003. The hearing was held in conjunction with another case, *Rubin v. Islamic Rep. of Iran*, DC Dist. Ct. Docket no. 01-CV-1655. The Rubin plaintiffs were represented by other counsel having nothing to do with the Wallenberg Center.

12.     Judgment in the FSIA Action was entered on September 10, 2003 granting judgment for compensatory damages to Diana Campuzano in the amount of $18,952,725; Avi Elishis in the amount of $12,010,882.87; and Gregg Salzman in the amount of $10,000,000. In addition, punitive damages in the amount of $37,500,000 were awarded to each plaintiff. The same judgment also made awards to the plaintiff in *Rubin*.

13.     After the judgment was entered, plaintiffs heard nothing of substance from the ACCJ for years.

14.     On April 30, 2008 AMBUSH filed a notice of appearance in the FSIA Action as counsel for the plaintiffs.

15.     AMBUSH continued as counsel of record for the plaintiffs in the FSIA Action until April 5, 2017 when he filed a motion to withdraw as counsel and that motion was granted the same day.

16.     The docket in the FSIA Action reflects that AMBUSH took no steps ever to protect the plaintiffs' rights.

17.     In 2015 AMBUSH filed an action against the ACCJ. *Ambush v. Engleberg*, D.D.C. Docket 15-cv-1237, in which he accused the ACCJ of many acts of fraud and malfeasance, but even though he was counsel of record for the plaintiffs he never informed the plaintiffs of such fraud and malfeasance.

18.     Meanwhile, and unbeknownst to the plaintiffs at the time, another group of plaintiffs "represented" by the ACCJ, referred to as the "Heiser plaintiffs," were also bringing their case against Iran relating to the June 25, 1996 bombing at the Khobar Towers, a residence on a United States military base in Dhahran, Saudi Arabia. *Heiser v. Islamic Rep. of Iran,* D.C. Dist. Ct. Docket nos. 00-2329 and 01-2104.

19.     The *Heiser* case also proceeded to a default judgment and a default hearing was held in December 2003. A judgment was entered in 2006, *Estate of Heiser v. Islamic Rep. of Iran,* 466 F. Supp. 2d 229 (D.D.C. 2006).

20.     The *Heiser* case had a large number of plaintiffs, and resulted in a judgment of approximately $590 million collectively, including compensatory and punitive damages.

21.     The docket of the *Heiser* case, 00-2329, reflects that originally Mr. McDermott was counsel for the plaintiff, but was substituted out on February 20, 2003, shortly before the hearing in plaintiff's case.

22. The new lawyers who took over in *Heiser* were the firm DLA Piper. [*Heiser* DE 14].

23. In *Heiser,* the judgment was entered on December 22, 2006 [*Heiser* DE 134]. It was immediately served on the defendants as required, and a notice of such service was docketed on September 28, 2007 [*Heiser* DE 135]. DLA Piper filed a motion to enforce the judgment on December 12, 2007 [*Heiser* DE 136] and that motion was granted on February 7, 2008 [*Heiser,* DE 137].

24. Thus, even though plaintiffs' judgment was entered three years <u>before</u> the *Heiser* judgment, the *Heiser plaintiffs* had the judgment all entered and served, and had obtained permission to enforce it, nearly four years <u>before</u> the same was achieved in plaintiffs' case.

25. Plaintiffs' case should have been seven years ahead of *Heiser* in enforcement, but after the judgment was entered plaintiffs' case received next to no attention, while the ACCJ people were obviously focusing on *Heiser*, which is a much bigger case because it involved many more plaintiffs, and involved deaths, rather than injuries.

26. Indeed, in 2007 ACCJ entered into a new retainer with DLA Piper to handle proceedings to enforce the Heiser judgment, which states that the ACCJ represents or "controls judgments" of other judgment-creditors of Iran, but specifically provides that DLA Piper will make no efforts to enforce such other judgments until the Heiser judgment is paid in full.

27. In 2011 ACCJ entered into another retainer with DLA Piper to handle proceedings to enforce the *Heiser* judgment, which states that the ACCJ represents or "controls judgments" of other judgment-creditors of Iran, but specifically provides that DLA Piper will make no efforts to enforce such other judgments until the Heiser judgment is paid in full.

28.     Collection proceedings in the *Heiser* case have been vigorous, with filing of *lis pendens*, a writ of garnishment, numerous writs of attachment, and the like—over 140 docket entries since the judgment was entered, plus appeals. In addition, a Google or Westlaw search reveals that there are numerous and aggressive supplemental proceedings pending to enforce the *Heiser* judgment.

29.     As a result of the creditor process, including a writ of garnishment, served on behalf of the Heiser plaintiffs, the Heisers were made parties to an interpleader complaint, *Peterson v. Islamic Rep. of Iran*, S.D.N.Y 10-cv-4518, a proceeding in which close to $2 <u>billion</u> of Iranian assets were distributed to a group of judgment creditors of Iran including the Heisers, and including the Rubin plaintiffs who were injured in the same attack as the plaintiffs and whose judgment was obtained at the same hearing as the plaintiff's. The Supreme Court has affirmed the distribution of the funds in Peterson, *Markazi. Bank Markzi v. Peterson*, 578 U.S. ___, 136 S. Ct. 1310 (Apr. 20, 2016), and specifically noted the omission of the plaintiffs:

> The 16 judgments include: *Wultz v. Islamic Republic of Iran*, 864 F. Supp. 2d 24 (DC 2012); *Murphy v. Islamic Republic of Iran*, 740 F. Supp. 2d 51 (DC 2010); *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52 (DC 2010) (granting judgment in consolidation of four actions at issue here: *Valore*, No. 1:03–cv–01959; *Bonk v. Islamic Republic of Iran*, No. 1:08–cv–01273; *Spencer v. Islamic Republic of Iran*, No. 1:06–cv–00750; and *Arnold v. Islamic Republic of Iran*, No. 1:06–cv–00516); *Estate of Brown v. Islamic Republic of Iran*, No. 1:08–cv–00531 (D DC, Feb. 1, 2010); *Acosta v. Islamic Republic of Iran*, 574 F. Supp. 2d 15 (DC 2008); *Beer v. Islamic Republic of Iran*, 574 F. Supp. 2d 1 (DC 2008); *Kirschenbaum v. Islamic Republic of Iran*, 572 F. Supp. 2d 200 (DC 2008); *Levin v. Islamic Republic of Iran*, 529 F. Supp. 2d 1 (DC 2007); *Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229 (DC 2006); *Estate of Bland v. Islamic Republic of Iran*, No. 1:05– cv–02124 (D DC, Dec. 6, 2006); *Greenbaum v. Islamic Republic of Iran*, 451 F. Supp. 2d 90 (DC 2006); ***Campuzano v. Islamic Republic of Iran*, 281 F. Supp. 2d 258 (DC 2003) (awarding judgment in both the *Rubin* action, *Rubin v. Islamic Republic of Iran*, No. 1:01–cv–01655, the plaintiff of which are respondents here, and the *Campuzano***

**action, the plaintiff of which are not**); *Peterson v. Islamic Republic of Iran*, 264 F. Supp. 2d 46 (DC 2003). Three additional groups of plaintiff with claims against Iran were voluntarily dismissed from the instant litigation after "informing the [District Court] that none of the plaintiff in those actions ha[d] obtained judgments for damages against Iran." App. to Pet. for Cert. 19a.

*Id.,* n.5 (emphasis added).

30.     Thus, all the judgment-creditors named in 16 different actions against Iran received a share of that recovery, including the *Heisers.* The instant plaintiffs, however, received nothing—for no good reason at all, since their judgment pre-dated the *Heiser* judgment by years and there is no valid reason why they were not included.

31.     The Peterson case includes numerous judgment creditors of Iran, including the *Heiser plaintiffs*, as well as plaintiff groupings referred to as *Silvia and Valore,* whose case had a 2006 docket number; *Wultz*, whose case had a 2008 docket number; *Bland*, whose case had a 2005 docket number; *Bonk,* whose case had a 2008 docket number; *Levin,* whose case had a 2005 docket number; and *Greenbaum, Acosta, Beer* and *Kirshenbaum,* whose cases had docket numbers of 2002, 2003, 2006 and 2008.

32.     The instant plaintiffs already had their judgment by 2003, and should have had priority over all the claimants in the Peterson case.

33.     Not having been included in the *Peterson* matter has cost the plaintiffs what would have been their share of the recovery in *Peterson,* upon information and belief approximately $20 million.

34.     On July 23, 2018, Supreme Court, Nassau County entered an order in *Campuzano v. Sher,* Index no. 605379/16 ("Nassau County Action"), granting summary judgment to the plaintiffs in an action against the ACCJ and certain individuals associated with the ACCJ, finding that the ACCJ had breached its fiduciary duties to the plaintiffs (Ex. A).

35.     The July 23, 2018 order in the Nassau County Action further held that Neal Sher, Esq., another lawyer employed by the ACCJ and who also had appeared as counsel of record for the plaintiffs in the FSIA Action, was liable to the plaintiffs for legal malpractice.

36.     As counsel of record for the plaintiffs in the FSIA Action, Ambush is equally liable to the plaintiffs along with the ACCJ and other defendants in the Nassau County Action.

## AS AND FOR A FIRST CLAIM FOR RELIEF

37.     Plaintiffs repeat and re-allege each of the foregoing allegations with the same force and effect as if more fully set forth herein.

38.     The defendant AMBUSH holds himself out as an attorney licensed to practice law.

39.     AMBUSH was counsel of record for the plaintiffs in the FSIA Action for nine years, from 2008 – 2017.

40.     During those nine years, AMBUSH did nothing for the plaintiff.

41.     During those none years, AMBUSH operated under a conflict of interest, as he was suing the ACCJ and individuals associated with the ACCJ, including Michael Engelberg, Elizer Perr, and Yedidiah Perr, alleging fraud, yet he failed to inform the plaintiffs of these claims, his contention that the ACCJ and these individuals had committed fraud.

42.     Upon information and belief, AMBUSH was fully aware that the plaintiffs had executed a power of attorney authorizing ENGELBERG to act as their attorney-in-fact, a role that carries a fiduciary duty, as held by the court in the Nassau County action, which makes it particularly egregious that AMBUSH, as counsel of record for the plaintiffs in the FSIA Action, failed to inform the plaintiffs of his believes regarding Engelberg committing fraud, or the fact that AMBUSH had sued the ACCJ, Engelberg, and the Perrs.

43.     AMBUSH subordinating the interests of the plaintiff to his own.

44.     As counsel for the plaintiffs, AMBUSH had a duty to truthfully advise them of her rights, including to inform her that the ACCJ and ENGELBERG were acting against her interests, and that he believed that the ACCJ and Engelberg were untrustworthy and were engaged in fraud.

45.     During those nine years, AMBUSH failed to truthfully advise the plaintiffs of their rights.

46.     During those nine  years, AMBUSH failed to truthfully advise the plaintiffs of the conflict of interest.

47.     The defendant AMBUSH was reckless, careless, and negligent, and failed to act in accordance with good and accepted legal practice, in that he: failed to properly advise; failed to maintain a legal file; failed to pursue enforcement of the plaintiff's judgment, while affirmatively pursuing enforcement of other judgment creditors of Iran who had equivalent or even inferior claims; pursued judgment enforcement on behalf of other clients / principals, and not on behalf of the plaintiff; failed to inform the plaintiff of the conflict of interest and to offer them an opportunity to retain alternate counsel, in general and specifically in the *Peterson* case where the plaintiff should have had exactly the same standing as the *Rubin* plaintiffs, who were included; failed to inform plaintiffs that he was acting outside his competence zone; failed to properly conduct due diligence; failed to inform plaintiffs that they should seek advice of other counsel; failed to comply with applicable statutes, laws, rules and regulations; failed to have efficient and sufficient personnel; failed to comport himself reasonably and prudently; failed to warn plaintiff of the dangers and perils; and was  otherwise reckless, careless and negligent.

48.     AMBUSH's malpractice caused plaintiffs to be damaged in that their judgment remains unenforced, they has made no monetary recovery, and their judgment has been subordinated in multiple enforcement efforts to the judgment of the Heiser plaintiffs.

49.     Among the damages suffered by the plaintiff was their exclusion from the *Peterson* case. Had they been included in that case and received a share of the recovery prorated against the compensatory damages awards of the other judgment creditors who participated in that case, the plaintiff's shares would likely have come to approximately $20,543,903, plus interest since 2003.

50.     By reason of the foregoing, the plaintiff is entitled to recover the full extent of their damages.

## JURY DEMAND

51.     Plaintiffs demand trial by jury of all issues legally triable to a jury.

**WHEREFORE**, the plaintiffs demand judgment against the defendant in the amounts and for the relief requested herein, plus such preliminary and injunctive relief as may be permitted by law and/or equity or the court's inherent powers, all in addition to such interest and attorney's fees as may be recovered by law.

Dated:   Brooklyn, New York
         February 19, 2019

                              Yours,

                              THE BERKMAN LAW OFFICE, LLC
                              *Attorneys for the plaintiffs*


                              by:   _____
                                    Robert J. Tolchin

-10-

111 Livingston Street, Suite 1928
Brooklyn, New York 11201
(718) 855-3627