# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DIANA CAMPUZANO,** *et al.*, <br><br> **Plaintiffs,** <br><br> **v.** <br><br> **JOSHUA M. AMBUSH,** <br> Hilton Plaza <br> 1726 Reisterstown Road, Suite 206 <br> Baltimore, Maryland 21208 <br><br> **Defendant.** | **Case No. 19-cv-00421 (RDM)** |

**DEFENDANT JOSHUA M. AMBUSH'S MOTION TO DISMISS OR
IN THE ALTERNATIVE FOR TRANSFER OF VENUE TO THE
<u>UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY</u>**

<u>**/s/ Ángel Sosa**</u>
Ángel Sosa
DC Bar No. 1,000,094
E-mail: asosa@tcm.law

**TORO COLÓN MULLET, P.S.C.**
416 Ponce de León Avenue
Union Plaza, Suite 311
San Juan, Puerto Rico 00918-3430
Tel. (787) 751-8999
Fax: (787) 763-7760
*Attorneys for Defendant Joshua M. Ambush*

Dated: March 19, 2019

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**DIANA CAMPUZANO,** *et al.*,

   **Plaintiffs,**

   **v.**

**JOSHUA M. AMBUSH,**
Hilton Plaza
1726 Reisterstown Road, Suite 206
Baltimore, Maryland 21208

   **Defendant.**

**Case No. 19-cv-00421 (RDM)**

## TABLE OF CONTENTS

I.  BACKGROUND…………………………………………………………2-7

  A. Timing of the "DC Case"………………………………………………….2-6

  B. ACCJ's Chapter 11 Bankruptcy Case………………………………………..6-7

SUMMARY OF ARGUMENT………………………………………………………7-8

LEGAL ARGUMENT………………………………………………………………...8-20

I.  THE ACTION MUST BE DISMISSED BECAUSE IT WAS

  FILED AFTER THE STATUTE OF LIMITATIONS HAD

  EXPIRED……………………………………………………………………8-12

II.  TRANSFER OF VENUE TO THE DISTRICT OF NEW

  JERSEY IS WARRANTED……………………………………………...12-20

  A. Governing Standards…………………………………………………13-17

B.  Both the Section 1404(a) Interest of Justice Factors and the

Principles and Policies of Centralizing Disputes Weigh in

Favor of Transferring the Action to the Venue of ACCJ's

Bankruptcy Proceeding……………………………………………………17-20

CONCLUSION…………………………………………………………………………..20

CERTIFICATE OF SERVICE…………………………………………………………..20

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **DIANA CAMPUZANO,** *et al.*, | |
| **Plaintiffs,** | |
| **v.** | Case No. 19-cv-00421 (RDM) |
| **JOSHUA M. AMBUSH,** Hilton Plaza 1726 Reisterstown Road, Suite 206 Baltimore, Maryland 21208 | |
| **Defendant.** | |

## <u>TABLE OF AUTHORITIES</u>

Page

**Cases**

*Al's Family Automotive v. Bennett,* 2012 WL 246226,

\*2 (E.D. Pa. Jan. 25, 2012)………………………………………………………. 16

*BDO Seidman, LLP v. Morgan, Lewis & Bockius LLP,*

89 A.3d 492, 500, 501 (D.C. 2014)……………………………………………… 9

*Bederson v. United States*, 756 F.Supp.2d 38, 46 (D.D.C. 2010)…………………... 13, 14

*DePippo v. Chertoff*, 453 F.Supp.2d 30, 33 (D.D.C. 2006)………………………… 8

*Diamond v. Davis*, 680 A.2d 364, 372 (D.C. 1996)……………………………….. 9

*Federal Housing Finance Agency v. First Tennessee Bank Nat. Ass'n,*

856 F.Supp.2d 186, 190, 192-195 (D.D.C. 2012)…………………………………... 13, 14

*Gulf States Exploration Co. v. Manville Forest Products Corp.*

*(In re Manville Forest Products Corp.),* 896 F.2d 1384, 1390-1391

(2d Cir. 1990)…………………………………………………………….. 15, 16,

17

*Jung v. Mundy, Holt & Mance, P.C.*, 372 F.3d 429, 433 (D.C. Cir. 2004)………… 8

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183-84 (1952)…….. 15

*Larami Ltd. v. Yes! Entertainment Corp.,* 244 B.R. 56, 61-62 (D.N.J. 2000)……… 16

*McGillis/Eckman Investments-Billings, LLC v. Sportsman's Warehouse, Inc.,*

2010 WL 3123266, *7 (D. Mont. Jun. 30, 2010)………………………………... 17

*M.M.M. on behalf of J.M.A. v. Sessions,* 319 F.Supp.3d 290, 294 (D.D.C. 2018)…. 13

*Momenian v. Davidson,* 878 F.3d 381, 388-389 (D.C. Cir. 2017)………………… 8, 9, 11

*Publicker Indus. Inc. v. U.S. (In re Cuyahoga Equipment Corp.),*

980 F.2d 110, 116 (2d Cir. 1992)……………………………………………... 15

*Ray v. Queen*, 747 A.2d 1137, 1141-42 (D.C. 2000)………………………………. 9

*Reiffin v. Microsoft Corp.*, 104 F.Supp.2d 48, 58 (D.D.C. 2000)…………………... 14

*Reifler v. Glaser, Weil, Fink, Jacobs, Howard & Shapiro, LLP,*

435 B.R. 118, 120-21 (S.D.N.Y. 2010)……………………………………….. 14, 19

*Shared Network Users Group, Inc. v. WorldCom Technologies, Inc.,*

309 B.R. 446, 452 (E.D. Pa. 2004)…………………………………………… 16

*Strong-Fischer v. Peters*, 554 F.Supp.2d 19, 21 (D.D.C. 2008)……………………. 8

*U.S. Vision, Inc. v. AS IP Holdings, Inc.,* 2012 WL 243358,

*6 (D.N.J. Jan. 25, 2012)……………………………………………………… 17

*Washington State Bank v. Turnage*, 2011 WL 1561440,

*6 (W.D. La. Apr. 25, 2011)…………………………………………………...   17

*Xtreme Industries, LLC v. Gulf Copper & Mfg. Corp.*, 2010 WL 4962967

(S.D. Tex. Dec. 1, 2010)………………………………………………………   17

**Statutes and Rules**

11 U.S.C. § 1101 *et seq*…………………………………………………………..   6

11 U.S.C. § 362…………………………………………………………………...   18

28 U.S.C. § 157(b)(2)(B)………………………………………………………...   18

28 U.S.C. § 1404…………………………………………………………………   1, 7-8,

13, 16,

19

28 U.S.C. § 1412…………………………………………………………………   15, 16

DC Code § 12-301(8)……………………………………………………………   8

Fed. R. Civ. P. 12(b)(6)…………………………………………………………..   8

LCvR 40.5(a)(3)………………………………………………………………….   1

NY CPLR § 214(6)………………………………………………………………   8

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **DIANA CAMPUZANO, *et al.*,** <br><br> **Plaintiffs,** <br><br> **v.** <br><br> **JOSHUA M. AMBUSH,** <br> Hilton Plaza <br> 1726 Reisterstown Road, Suite 206 <br> Baltimore, Maryland 21208 <br><br> **Defendant.** | **Case No. 19-cv-00421 (RDM)** |

**DEFENDANT JOSHUA M. AMBUSH'S MOTION TO DISMISS OR
IN THE ALTERNATIVE FOR TRANSFER OF VENUE TO THE
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

Defendant, Joshua M. Ambush ("Ambush"), respectfully seeks to dismiss the instant action (the "Action") or, in the alternative, to transfer venue of the Action from this Court to the United States District Court for the District of New Jersey, pursuant to Title 28 of the United States Code, section 1404.  The basis for dismissal is that the Action was not filed within the applicable statute of limitations.  The basis for transfer of venue is that the Action is related to the Chapter 11 bankruptcy proceeding of American Center for Civil Justice, Inc. ("ACCJ"), which is being heard in the District of New Jersey such that under applicable law transfer is proper.[1]

---

[1] For purposes of LCvR 40.5(a)(3), there is a Related Case: *Joshua M. Ambush v. Michael Engelberg, et al.*, Case No. 15-cv-1237-EGS (D.D.C.) ("*Ambush v. Engelberg*"). This case was stayed due to the bankruptcy filing of ACCJ, and the claims made there against ACCJ are part of the claim filed by Ambush in the bankruptcy.

## I.     BACKGROUND

On September 4, 1997, Diana Campuzano, Avi Elishis, and Gregg Salzman (the "Plaintiffs") were injured in a suicide bombing attack carried out by the Hamas terrorist group. Over the next several years, several attorneys pursued litigation and secured judgments on behalf of the Plaintiffs for compensatory and punitive damages.  Plaintiffs were connected with these attorneys through ACCJ, which is an organization that would refer attorneys to provide legal services for victims of terrorism.  At some point between approximately December 2000 and November 2008, Ambush was one of those attorneys.  *See* Exhibit 1, Docket Report for *Campuzano v. Iran*, Case No. 00-cv-2328(RDM).

### A.  Timing of the "DC Case"

On September 29, 2000, John J. McDermott, Esq., filed a complaint on behalf of Plaintiffs in the United States District Court for the District of Columbia, under the caption of *Diana Campuzano, et al., v. Islamic Republic of Iran, et al.* ("*Campuzano v. Iran*" or the "DC Case").  *See* Exhibit 1, Docket Report for *Campuzano v. Iran*, Case No. 00-cv-2328(RDM), Doc. 1.  On September 10, 2003, the Court entered judgment in favor of the Plaintiffs.  *See* Exhibit 1, Doc. 52.  The DC Case was terminated on that date, *i.e.*, September 10, 2003.  *See id.*

Approximately five (5) years later, after being dormant for more than four (4) years, on April 30, 2008, Ambush entered his appearance in the DC Case on behalf of the Plaintiffs for the sole purpose of serving the judgment on the defendants, pursuant to the Motion for Entry of Final Judgment that had been previously filed by Paul Gaston, Esq.  *See* Exhibit 1, Docs. 54 and 56.  However, after Ambush prepared the attendant affidavit of service for that judgment, on July 7, 2008, the Court denied Mr. Gaston's motion.  *See* Exhibit 1, Minute Order of July 7, 2008. The court reasoned that the case had not been "before the court" since final judgment was

entered on September 10, 2003.  Plaintiffs' ongoing collection efforts through Mr. Gaston did not constitute the case being open.  *See id.*  This terminated Ambush's involvement in the DC Case.  Mr. Gaston continued his ongoing representation of Plaintiffs.  That was the extent of Ambush's representation of Plaintiffs in the DC Case.

During the pendency of the DC Case, Ambush never signed any pleading on behalf of the Plaintiffs.  *See* Exhibit 1.  He never executed a retainer agreement or entered into a fee agreement with the Plaintiffs.  He simply entered his appearance as a formality, for the sole purpose of aiding Mr. Gaston, Plaintiffs' attorney of record, in preparing a final judgment for service on the defendants.

On August 1, 2008, Mr. Gaston filed a Notice of Appeal on behalf of Plaintiffs in the DC Case.  *See* Exhibit 1, Doc. 57.  On October 23, 2008, the appeal was voluntarily dismissed, and the case was dismissed.  *See* Exhibit 1, Doc. 59.

Several years later, on November 22, 2011, Neal M. Sher, Esq., filed a motion on behalf of the Plaintiffs to pursue collection of the September 10, 2003 judgment in the DC Case.  *See* Exhibit 1, Doc. 62.  Mr. Sher entered his appearance on the following day.  *See* Exhibit 1, Doc. 63.  Ambush played no role in the collection efforts initiated by Mr. Sher.  Ambush was not Mr. Sher's co-counsel.

On September 17, 2015, Avi Elishis and Gregg Salzman sent correspondence to Mr. Sher, ACCJ, and certain principals of ACCJ, formally terminating "all agreements between myself and any and all of you, as well as any agreements with the [ACCJ]…"  Exhibit 2, *Campuzano v. Iran*, Docs. 70-1, pg. 1, and 70-2, pg. 1.  In those communications, they stated their reasons for terminating ACCJ and its related parties:

> I have made the decision to part ways with you for many reasons. Foremost among them are your refusal to provide me with information about efforts being

made to collect my judgment, and your placing other judgment creditors of Iran ahead of me without advising me or obtaining my consent. Another reason is that you have not had any lawyer serving as my counsel, and have instead hired lawyers on a piecework basis and have allowed non-lawyers to make legal decisions. Additionally, I was horrified by the submissions to the court made by both sides in *Eilenberg [sic] v. Perr* in Nassau County, as well as the filings in *Ambush v. Engleberg* [sic] in the D.C. District Court, all of which paint a sordid tale of greed, self-dealing, conflict of interest, and irresponsibility on your part. Lastly it is now 12 years since the judgment was entered, not a penny has been collected, and you refuse to inform me where any collection efforts stand or to provide me with copies of filings.

Exhibit 2, *Campuzano v. Iran*, Docs. 70-1, pg. 1-2, and 70-2, pg. 1-2 (underlining added).

The reasons given by Elishis and Salzman are the same claims that they are now making in the Complaint, including that ACCJ "…ha[s] not had any lawyer serving as my counsel, and ha[s] instead hired lawyers on a piecework basis…"  Exhibit 2, *Campuzano v. Iran*, Docs. 70-1, pg. 2, and 70-2, pg. 2.  Those two letters were also attached as exhibits to Mr. Tolchin's Motion to Compel Prior Counsel to Turn Over Files ("Motion to Compel"), filed on January 7, 2016, in the DC Case.  *See* Exhibit 2, *Campuzano v. Iran*, Doc. 70.  Note that Elishis and Salzman were fully aware of the allegations made by Ambush in the Related Case of *Joshua M. Ambush v. Michael Engelberg, et al.*, Case No. 15-cv-1237-EGS (D.D.C.) ("*Ambush v. Engelberg*").

Previously, on September 21, 2015, Robert J. Tolchin, Esq., counsel for the Plaintiffs in this Action, had filed a Notice of Appearance in the DC Case on behalf of Avi Elishis and Gregg Salzman.  *See* Exhibit 1, Doc. 69.  On January 7, 2016, Mr. Tolchin filed the Motion to Compel. *See* Exhibit 2, *Campuzano v. Iran*, Doc. 70.  Along with the Motion to Compel, Mr. Tolchin included an email message from Ambush to Mr. Tolchin, dated September 25, 2015, in which Ambush advised Mr. Tolchin that he had not taken any action in the case beyond 2008.  *See* Exhibit 2, *Campuzano v. Iran*, Doc. 70-6 ("Although I entered my appearance in this case in 2008 I have not taken any action beyond that. (See ECF # 56). I have not made any efforts to

enforce plaintiffs' judgments, and I never received nor do I have any of your clients' files in my possession.").   Importantly, Mr. Tolchin acknowledged in the Motion to Compel that the nature of Ambush's representation of the Plaintiffs was that he had been "employed or retained for a specific task at some point" by ACCJ.   Exhibit 2, *Campuzano v. Iran*, Doc. 70, at pg. 3-4. Indeed, in the Motion to Compel, Mr. Tolchin recognized that "Mr. Ambush also emailed to say he has taken no actions beyond 2008 (Ex. F)."   Exhibit 2, *Campuzano v. Iran*, Doc. 70, at pg. 3. By the date of Ambush's email to Mr. Tolchin, September 25, 2015, Mr. Tolchin, Mr. Elishis and Mr. Salzman already knew the full extent of the participation of Ambush in the DC Case. By the date Mr. Tolchin filed the Motion to Compel on January 7, 2016, he recognized those facts before this Honorable Court.

On June 30, 2016, Mr. Tolchin filed another Notice of Appearance in the DC Case, this time on behalf of Diana Campuzano.  *See* Exhibit 1, Doc. 86.  On April 5, 2017, in response to a Motion for Order to Show Cause filed by the Plaintiffs in the DC Case, Ambush formalized his withdrawal from representation of the Plaintiffs by filing a Motion to Withdraw as Attorney.  See Exhibit 1, Docs. 87, 88 and Minute Order of April 5, 2017; and Exhibit 3, *Campuzano v. Iran*, Motion to Withdraw as Counsel, Doc. 88, ¶ 3.  Plaintiffs wanted to clean up the attorney list with the Court in order to eliminate potential claims for attorneys' fees from the proceeds of the compensation award that had been recovered.  *See* Exhibit 4, *Campuzano v. Iran*, Motion for Order to Show Cause, Doc. 87, pg. 3.  At the time he filed the Motion to Withdraw, Ambush had not acted in a representative capacity for the Plaintiffs since 2008.  At least since September 25, 2015, Plaintiffs and Mr. Tolchin were fully aware of this.

On February 19, 2019, Plaintiffs' filed the current Action, alleging that Ambush is liable for legal malpractice based on his representation—through his "employment" with ACCJ—of them in the DC Case. *See* Complaint, Doc. 3, ¶ 3.

**B.  ACCJ's Chapter 11 Bankruptcy Case**

On March 23, 2018, ACCJ filed a petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of New Jersey. *See* Exhibit 5, *In re American Center for Civil Justice, Inc.*, Case No. 18-bk-15691(CMG) (Bankr. D.N.J.), Docket Report.  ACCJ's bankruptcy case remains ongoing and involves all of the parties in this Action, all of whom are creditors of ACCJ. *See* Exhibit 6, *In re American Center for Civil Justice, Inc.*, Case No. 18-bk-15691(CMG) (Bankr. D.N.J.), Claims Register.  On April 5, 2018, Ambush filed a Proof of Claim in ACCJ's case for $31,800,000.00, based, primarily, in his lawsuit in the Related Case of *Ambush v. Engelberg*. *See* Exhibit 7, *In re American Center for Civil Justice, Inc.*, Case No. 18-bk-15691(CMG) (Bankr. D.N.J.), Claim 2-1.  Administration and litigation of that claim remains ongoing; the parties are currently undergoing court-ordered discovery efforts in that regard. *See* Exhibit 8, *ACCJ v. Ambush*, Adv. Pro. No. 18-ap-1273(CMG) (Bankr. D.N.J.), Docket Report, Doc. 12.  Importantly, if Plaintiffs are able to establish that Ambush was acting as their counsel, he was doing so at the request and direction of ACCJ, who would be liable to Ambush under common law notions of indemnification.  This indemnification claim will serve to increase Ambush's claim against the ACCJ bankruptcy estate.[2]

---

[2]   Ambush has not yet amended his Proof of Claim but has the legal right to do so should this case not be dismissed in response to this Motion.

By way of the instant motion (the "Motion"), Ambush respectfully seeks to dismiss the Action for failure to file within the statute of limitations or, in the alternative, to transfer venue of the Action from this Court to the United States District Court for the District of New Jersey.

## SUMMARY OF ARGUMENT

Ambush respectfully submits that this Action should be dismissed, as it was filed outside the applicable statute of limitations. Ambush's representation of Plaintiffs began and ended in 2008. Thus, the statute of limitations expired no later than 2011. Even if Plaintiffs contest whether the representation continued after 2008, clearly the representation terminated no later than 2015, when Plaintiffs sent the letter of termination to ACCJ and recognized the limited participation of Ambush in the DC Case. This Action was not filed until February 19, 2019. Therefore, the Action must be dismissed as untimely.

In the event that the Court does not dismiss this case as untimely, Ambush respectfully submits that he be afforded alternative relief, *i.e.*, transfer of venue of the Action to the United States District Court for the District of New Jersey pursuant to 28 U.S.C. § 1404 because the District of New Jersey is where ACCJ's Chapter 11 bankruptcy proceeding is being heard. The Action concerns issues that are integral to ACCJ's bankruptcy proceeding. The resolution of the Action will directly affect the rights of creditors in ACCJ's bankruptcy. Accordingly, transfer of venue to the District of New Jersey is necessary to allow for the efficient administration of ACCJ's estate and to prevent a waste of judicial resources and potentially conflicting results that may occur should the Action be advanced in a different venue than the related bankruptcy proceeding.

As set forth in greater detail herein, transfer of venue to the District of New Jersey is justifiable on the basis of numerous decisions emphasizing the importance of centralizing disputes with the forum overseeing a related bankruptcy proceeding.

In addition, the factors considered for determining the "interest of justice" under section 1404(a) do not militate *against* transfer of venue because significant resources would be saved given that the parties, witnesses (if any), and counsel would not have to appear and litigate the same or similar issues and facts before both, this Court and the District of New Jersey.

## LEGAL ARGUMENT

I.   **THE ACTION MUST BE DISMISSED BECAUSE IT WAS FILED AFTER THE STATUTE OF LIMITATIONS HAD EXPIRED**

A motion to dismiss on statute of limitations grounds is governed by Fed.R.Civ.P. 12(b)(6). *See Strong-Fischer v. Peters*, 554 F.Supp.2d 19, 21 (D.D.C. 2008). A court should grant a pre-discovery motion to dismiss on statute of limitations grounds if the complaint is time-barred on its face. *See id.* (citing *DePippo v. Chertoff*, 453 F.Supp.2d 30, 33 (D.D.C. 2006)).

The Action appears to be a claim for legal malpractice against Ambush. *See* Complaint, Doc. 3, ¶¶ 40-48. Regardless of whether New York or District of Columbia law applies, the statute of limitations for a legal malpractice claim is three years. *See* NY CPLR § 214(6); D.C. Code § 12-301(8). The "discovery rule" is used to determine when a cause of action accrues. *See Momenian v. Davidson,* 878 F.3d 381, 388 (D.C. Cir. 2017). "Under the discovery rule, 'a cause of action accrues when a plaintiff knew or should have known through the exercise of reasonable diligence of: (1) the existence of the injury, (2) its cause in fact, and (3) some evidence of wrongdoing.'" *Momenian*, 878 F.3d at 388 (quoting *Jung v. Mundy, Holt & Mance, P.C.*, 372 F.3d 429, 433 (D.C. Cir. 2004)). Determining when a plaintiff had or should have had knowledge of a lawyer's malpractice entails a factual analysis of the conduct and the

representations of the lawyer and the reasonableness of the client's reliance thereon. *See Diamond v. Davis*, 680 A.2d 364, 372 (D.C. 1996) (*per curiam*). In *Momenian*, the D.C. Circuit held that:

> "Inquiry notice extends to 'that [knowledge] which a plaintiff would have possessed after due investigation' " as measured by an objective standard of reasonable diligence under the circumstances. *BDO Seidman, LLP v. Morgan, Lewis & Bockius LLP*, 89 A.3d 492, 500 (D.C. 2014) (quoting *Diamond*, 680 A.2d at 372); *Doe*, 814 A.2d at 958 ("[T]he standards by which the discovery rule is applied are objective."). "The critical question ... is whether the plaintiff exercised reasonable diligence under the circumstances in acting or failing to act on whatever information was available to him." *Ray v. Queen*, 747 A.2d 1137, 1141-42 (D.C. 2000). The analysis focuses "on the plaintiff's diligence in discovering the cause of action, rather than the defendant's misconduct ... given the purpose of statutes of limitation to protect defendants from stale claims." *BDO Seidman*, 89 A.3d at 501 (quotation marks and alteration omitted).

*Momenian*, 878 F.3d at 388.

> The application of the "discovery rule" to actions for legal malpractice is the same:

> The discovery rule's objective reasonable-diligence standard applies regardless of whether a plaintiff and defendant are in a fiduciary relationship, *id*. at 376, and an attorney-client relationship does not preclude the accrual of a malpractice claim under the discovery rule, e.g., *BDO Seidman*, 89 A.3d at 501. *See also Ray*, 747 A.2d at 1141 ("Inquiry notice is the applicable standard even ... in a legal malpractice case.").

*Id*. at 388-389.

Here, the complaint in the Action sets forth that Ambush was counsel of record for the Plaintiffs from 2008 to 2017. As a formality and in response to a motion filed by the Plaintiffs, Ambush filed a Motion to Withdraw as Counsel on April 5, 2017. *See* Exhibit 1, Docs. 87, 88 and Minute Order of April 5, 2017; and Exhibit 3, *Campuzano v. Iran*, Motion to Withdraw as Counsel, Doc. 88, ¶ 3. It appears to be Plaintiffs' position that this 2017 Motion to Withdraw is the determinative date for purposes of the statute of limitations. However, if this Court were to accept such a position, it would effectively impose a requirement that all attorneys formally

withdraw from a case after their work is complete and a case is closed to avoid perpetually tolling the statute of limitations.  That is an absurd, impractical result.  It is Ambush's position that the statute of limitations began to run in 2008 when he ceased any representative actions in the DC Case.  Alternatively, the statute of limitations began to run on September 17, 2015, when two of the Plaintiffs sent correspondence expressing their desire to sever ties with any attorney associated with ACCJ.  *See* Exhibit 2, *Campuzano v. Iran*, Docs. 70-1, pg. 1, and 70-2, pg. 1. Later, on September 25, 2015, Ambush advised Mr. Tolchin that he had not taken any action in the case beyond 2008.  *See* Exhibit 2, *Campuzano v. Iran*, Doc. 70-6.  At the latest, the statute of limitations started to run when Mr. Tolchin filed the Motion to Compel on January 7, 2016.  <u>See</u> Exhibit 2, *Campuzano v. Iran*, Doc. 70.  These documents show that by that date, the Plaintiffs were already aware of the full extent of Ambush's participation in the DC Case.

As explained above, Ambush entered his appearance in the DC Case in 2008 for the sole purpose of helping serve final judgment upon the defendant in that case.  That was the only role Ambush played in the DC Case whatsoever.  Ambush did not have contact with the Plaintiffs as their counsel in the DC Case after that time, he never signed any pleadings, and he never signed a retainer agreement with the Plaintiffs.  Helping prepare the final judgment for service was the first and last representative act Ambush took in the DC Case.  Following this, Mr. Sher entered his appearance and continued representing the Plaintiffs until Mr. Tolchin took over in 2015. Thus, Ambush's representation of Plaintiffs ceased in 2008, and the three-year statute of limitations expired in 2011.

Assuming, *arguendo*, that the Court is not convinced that the Plaintiffs had the requisite knowledge of any alleged wrongdoing in 2008, it is <u>certain</u> that the Plaintiffs had that knowledge no later than September 17, 2015, when Avi Elishis and Gregg Salzman sent correspondence to

Mr. Sher, ACCJ, and its representatives expressing their desire to sever ties.   In that correspondence, they expressed their reasons for terminating their relationship with ACCJ and its related parties.   Exhibit 2, *Campuzano v. Iran*, Docs. 70-1, pg. 1-2, and 70-2, pg. 1-2.   The claims they made against ACCJ in those letters are the same claims that they are now making against Ambush in the Complaint.   Thus, alternatively, the statute of limitations would have begun to run no later than September 17, 2015 and expired on September 17, 2018.   That would make the filing of this Action more than five (5) months late.

Plaintiffs might assert that Diana Campuzano cannot be charged with the same "knowledge" as Avi Elishis and Gregg Salzman, because Ms. Campuzano did not send correspondence indicating her intent to terminate an attorney-client relationship with the ACCJ-associated attorneys.   However, the "discovery rule" provides that a cause of action for malpractice accrues when the plaintiff has knowledge of or "<u>should have known through the exercise of reasonable diligence</u>" of the injury at issue, its cause in fact, and some evidence of wrongdoing.   *See Momenian*, 878 F.3d at 388 (emphasis added).   Although Diana Campuzano did not send correspondence of her own, Avi Elishis and Gregg Salzman were her co-plaintiffs in the DC Case.   All three parties were represented by Mr. Sher, and later by Mr. Tolchin, who is the attorney who represents all of them in this Action.   If Avi Elishis and Gregg Salzman were able to acquire knowledge of alleged legal malpractice conduct, Diana Campuzano should also have been able to do so by that date through an exercise of reasonable diligence.   Indeed, her co-plaintiffs and her counsel Mr. Tolchin, who was and still is counsel for all of them, could have supplied that information.[3]

---

[3] Also, from Mr. Tolchin's own words in his Motion to Compel, it seems that Diana Campuzano's relationship with ACCJ was even closer than the relationship that the other

Moreover, the Plaintiffs have previously acknowledged Ambush's limited role in the DC Case.  In the Motion to Compel, Plaintiffs acknowledge Ambush's position that he had not acted in a representative capacity on their behalf since 2008, as well as his position that he had entered the case to complete an isolated task in the case rather than to act in an ongoing representative capacity.  As a matter of fact, the Plaintiffs have known all the details since, at least, 2015.

It is Ambush's position that the statute of limitations expired as to this Action in 2011: three years after Ambush ceased active representation of the Plaintiffs in the DC Case. Nonetheless, even assuming that is not the case, the Plaintiffs had—or should have had— knowledge of any conduct giving rise to potential liability no later than September 17, 2015. Thus, pursuant to the discovery rule, the Plaintiffs had until September 17, 2018, *at the latest*, to file the Action.  Plaintiffs failed to file the Action until February 19, 2019, more than five (5) months after the statute of limitations had expired.  Therefore, Ambush respectfully requests that this Action be dismissed.

## II.   TRANSFER OF VENUE TO THE DISTRICT OF NEW JERSEY IS WARRANTED

If this Court is not inclined to dismiss this Action for failure to comply with the statute of limitations, the Court should alternatively transfer venue of the Action to the District of New

---

Plaintiffs Elishis and Salzman had.  This is what Mr. Tolchin stated as to Plaintiff Campuzano at the time:

> Frankly, the entire arrangement stinks of unlawful practice of law, champerty, and conflict of interest—the last since for some reason the Perr and Engleberg have been giving money to the third plaintiff, Campuzano, and have apparently included her in at least one enforcement proceeding in which he did not include Messrs. Elishis and Salzman.

*See* Exhibit 2, *Campuzano v. Iran*, Doc. 70, pg. 4.  Campuzano was in a position to inquire about the proceedings in the DC Case directly from ACCJ.

Jersey so that it can be administered in the same venue as ACCJ's bankruptcy proceeding. Though venue may be proper in this Court, venue is more appropriate in the District of New Jersey, as the issues involved in this Action are interwoven with the issues in ACCJ's bankruptcy proceeding, which is ongoing in the District of New Jersey.  Thus, transfer of venue to that court is warranted pursuant to 28 U.S.C. § 1404(a).

## A.  Governing Standards

Title 28 of the United States Code, Section 1404 provides, in pertinent part, that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).

The United States District Court for the District of Columbia has held that "Section 1404(a) affords the Court broad discretion in determining whether transfer from one jurisdiction to another is appropriate."  *M.M.M. on behalf of J.M.A. v. Sessions,* 319 F.Supp.3d 290, 294 (D.D.C. 2018) (internal citations omitted).  The transferring court uses its broad discretion to balance case-specific factors, including those "related to the public interest of justice and the private interests of the parties and witnesses."  *Federal Housing Finance Agency v. First Tennessee Bank Nat. Ass'n*, 856 F.Supp.2d 186, 190 (D.D.C. 2012) (internal citations omitted). The public interest factors include:

> i.   the local interest in making local decisions regarding local controversies;
>
> ii.  the relative congestion of the transferee and transferor courts; and
>
> iii. the potential transferee court's familiarity with the governing law.

*Id.* at 193 (citing *Bederson v. United States*, 756 F.Supp.2d 38, 46 (D.D.C. 2010)).  Further, the transferring court must consider the "'compelling public interest in avoiding duplicative

proceedings … and potentially inconsistent judgments.'" *Id.* (quoting *Reiffin v. Microsoft Corp.*, 104 F.Supp.2d 48, 58 (D.D.C. 2000)).

   The private interest factors include:

> i.   the plaintiff's choice of forum;
>
> ii.  the defendant's choice of forum;
>
> iii. where the claim arose;
>
> iv.  the convenience of the parties;
>
> v.   the convenience of witnesses; and
>
> vi.  the ease of access to the sources of proof.

*Id.* at 192 (citing *Bederson*, 756 F.Supp.2d at 46).   There does not appear to be a strict formula for the application of these factors, and no single factor appears to be determinative; rather, each factor is balanced on a case-by-case basis.  *See, e.g.*, *id.* at 192-95.

   Matters pertaining to bankruptcy proceedings in another district, however, may involve unique considerations because, "[a] principal purpose served by the Bankruptcy Code is the centralization of all disputes concerning the property of a debtor's estate so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas."  *Reifler v. Glaser, Weil, Fink, Jacobs, Howard & Shapiro, LLP*, 435 B.R. 118, 120-21 (S.D.N.Y. 2010) (wherein court referred matter to Bankruptcy Court pursuant to Title 28, section 157(a)) (internal citations omitted).  "…the obligation of a bankrupt entity to indemnify a third party need not be "definite" for a bankruptcy court to exercise jurisdiction. Indeed, a case may be referred to the bankruptcy court so long as there is a "reasonable legal basis" for the claim."  *Id* at pg. 121 (internal citations omitted).

Courts from several surrounding districts have recognized the importance of achieving judicial economy through having disputes resolved in the same forum that is already administering an associated bankruptcy proceeding.  In determining motions to transfer where bankruptcy proceedings are pending, courts have discretion in applying the principles of transfer of venue so as to preserve judicial resources.  *Publicker Indus. Inc. v. U.S. (In re Cuyahoga Equipment Corp.),* 980 F.2d 110 (2d Cir. 1992).  In *Publicker Indus. Inc.*, the court considered a motion to transfer venue away from the District Court in which a debtor's bankruptcy proceeding was being heard.  *See id.*  In holding that public policy favored centralizing administration of claims, the *Publicker* court cited the United States Supreme Court, and stated, "The policy of conserving scarce judicial resources militates in favor of a versatile solution to this sort of legal problem, leaving latitude to the district courts for the exercise of their informed discretion." *Publicker Indus. Inc.*, 980 F.2d at 116 (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183-84 (1952)).  The court observed that the claims at issue—bankruptcy and environmental claims—were both related and remained before the District Court, and thus, "keeping the entire action in New York was consonant with the policy of consolidation." *Id.*

Similarly, in *Gulf States Exploration Co. v. Manville Forest Products Corp. (In re Manville Forest Products Corp.),* 896 F.2d 1384 (2d Cir. 1990), in considering whether the transfer venue pursuant to 28 U.S.C. § 1412, the United States Court of Appeals for the Second Circuit held that the District Court in which a debtor's bankruptcy proceeding was being heard was the appropriate forum for the resolution of an adversary proceeding <u>notwithstanding that the convenience of parties and witnesses weighed in favor of transfer</u>.  The court found that the matter for which change of venue was sought, an adversary proceeding involving the determination of a proof of claim relating to an alleged prepetition breach of contract claim, was

"clearly at the core of the federal bankruptcy function of restructuring debtor-creditor rights, implicating the unique powers of bankruptcy courts." *Id.* at 1390. Therefore, the court stated that "[t]he 'interest of justice' component of § 1412 is a broad and flexible standard which must be applied on a case-by-case basis. It contemplates a consideration of whether transferring venue would promote the efficient administration of the bankruptcy estate, judicial economy, timeliness, and fairness-factors…"[4] *Id.* at 1391.

As stated by the Eastern District of Pennsylvania in granting a motion to transfer venue to the Southern District of New York:

> Here, we find the overwhelmingly significant factor, outweighing all others, is the judicial economy to be achieved in having the entire controversy decided in one forum, in this case the bankruptcy court which is already administering the WorldCom bankruptcy. If we ruled otherwise, it is inevitable that proceedings will be delayed and to some extent duplicated for a tremendous waste of time and money for all concerned.

*Shared Network Users Group, Inc. v. WorldCom Technologies, Inc.,* 309 B.R. 446, 452 (E.D. Pa. 2004); *see also Larami Ltd. v. Yes! Entertainment Corp.,* 244 B.R. 56, 61-62 (D.N.J. 2000) (holding that transfer of venue to Delaware bankruptcy court was warranted and finding that "[b]ecause the resolution of the patent infringement suit is integral to the proposed merger and Chapter 11 plan, the Court finds that judicial economy would be served by transferring this patent suit to the Bankruptcy Court").

Several decisions from other courts concerning motions to transfer venue reflect these principles. *See Al's Family Automotive v. Bennett,* 2012 WL 246226, *2 (E.D. Pa. Jan. 25, 2012)

---

[4] Although the instant Motion is not brought under section 1412, Ambush respectfully submits that these principles should be deemed relevant to the "interest of justice" formulation under section 1404 for purposes of the relief sought by Ambush. "…much of the essential wording of § 1412 is similar to § 1404(a)…" *Shared Network Users Group, Inc. v. WorldCom Technologies, Inc.*, 309 B.R. 446, 452 (E.D. Pa. 2004).

(granting motion to transfer venue and stating that "[b]ecause the counterclaim is related to Bennett's bankruptcy, it would be judicially efficient and economical to have the counterclaim and the bankruptcy proceeding decided by the same court"); *U.S. Vision, Inc. v. AS IP Holdings, Inc.,* 2012 WL 243358, *6 (D.N.J. Jan. 25, 2012) (granting motion to transfer venue to district where bankruptcy proceeding was ongoing and finding that "considerations of fairness and convenience as well as the interest of justice weigh in favor of such transfer"); *Washington State Bank v. Turnage*, 2011 WL 1561440, *6 (W.D. La. Apr. 25, 2011) (granting motion to transfer venue and stating that "judicial economy will be achieved in having the entire controversy decided in one forum – the bankruptcy court which is already administering O & G's bankruptcy"); *Xtreme Industries, LLC v. Gulf Copper & Mfg. Corp.*, 2010 WL 4962967 (S.D. Tex. Dec. 1, 2010) (transferring contract dispute to district where bankruptcy proceedings were pending); *McGillis/Eckman Investments-Billings, LLC v. Sportsman's Warehouse, Inc.,* 2010 WL 3123266, *7 (D. Mont. Jun. 30, 2010) (granting motion to transfer venue and stating that "judicial efficiency will be served by administering all claims against the bankruptcy estate in one forum, and the bankruptcy case remains pending in Delaware").

**B. Both the Section 1404(a) Interest of Justice Factors and the Principles and Policies of Centralizing Disputes Weigh in Favor of Transferring the Action to the Venue of ACCJ's Bankruptcy Proceeding.**

For multiple reasons, the issues arising under this Action are inextricably intertwined with ACCJ's bankruptcy proceeding, such that this Action should not remain in this venue. First, all parties to this Action are creditors of ACCJ and are actively involved in that case. More importantly, just like the *Gulf States Exploration* case, the resolution of this Action will directly affect the value of Ambush's Proof of Claim in ACCJ's case. When Ambush represented the Plaintiffs in the DC Case in 2008, he did it at the request of ACCJ. Thus, if this Action survives

dismissal, Ambush may pursue additional claims against ACCJ based on that relationship. While this might normally be accomplished by impleader, Ambush cannot file suit against ACCJ by virtue of the automatic stay entered when ACCJ filed its Chapter 11 proceeding.  *See* 11 U.S.C. § 362.  Instead, Ambush will need to pursue any third-party claims against ACCJ by seeking indemnification or reimbursement, thereby increasing his claim in ACCJ's bankruptcy proceeding.

The Action plainly concerns a claim against ACCJ, a matter which is inherently fundamental to the Chapter 11 proceeding pending in the District of New Jersey.  The Action also constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) because it directly affects, among other things, "the allowance or disallowance of claims against the estate or exemption from property of the estate, and estimation of claims or interests for the purposes of confirming a plan."  Put differently, resolution of this Action directly affects the determination of Ambush's proof of claim filed in ACCJ's bankruptcy proceeding.  Accordingly, the Action should be transferred to the District of New Jersey so that it may be heard by the same forum that is administering ACCJ's bankruptcy estate and its assets.

Given that the Action is integral to the bankruptcy proceeding, if the Action were to be heard by this Court separate and apart from the bankruptcy proceeding in the District of New Jersey, both courts would essentially be seeking to resolve the exact same issues pertaining to the Plaintiffs' claims against Ambush and ACCJ, as well as ACCJ's assets.  Scarce judicial resources would be wasted, delays would likely ensue, and potentially conflicting findings and rulings could arise.  It is irrefutable that it would be most judicially efficient and economical to have the same venue both hear the Action and administer the bankruptcy proceeding; to contend

otherwise would ignore the litany of case law favoring the centralization of disputes in the forum that is overseeing bankruptcy proceedings.

In addition, if the Action were to remain pending before this Court, not only would the principle of centralizing disputes be violated—which, again, has been described as a "principal purpose served by the Bankruptcy Code," *see Reifler,* 435 B.R. at 120-21—but Plaintiffs would also potentially be frustrating the Bankruptcy Code's policies relating to the orderly administration of estate assets.  That is, Plaintiffs would essentially be seeking to adjudicate their claim against ACCJ ahead of its other creditors.  Plaintiffs should not be permitted to interfere with the orderly administration of ACCJ's estate assets by pursuing their claims in a separate action in an entirely separate venue at an entirely separate pace from ACCJ's bankruptcy proceeding.

Furthermore, the factors set forth for determining "interest of justice" under section 1404(a) do not militate against transferring venue.  The location of ACCJ's bankruptcy proceeding, the Mercer vicinage of the District of New Jersey, is where all the parties to this Action have been pursuing their claims as creditors of ACCJ since that case was filed.  Therefore, it cannot be genuinely disputed that this difference will have a materially negative impact on either the convenience of witnesses, the convenience of parties, the locus of operative facts, *etc.*  There is no indication that either the parties or their respective counsel would be unduly burdened by litigating the Action in the District of New Jersey.  To the contrary, significant resources would almost certainly be saved given that the parties, witnesses (if any) and counsel would not have to appear and litigate the same issues and facts before two tribunals: this Court <u>and</u> the District of New Jersey.

For these reasons, the forum where ACCJ's bankruptcy case is proceeding, the District of New Jersey, is the appropriate forum for resolution of this Action. Accordingly, a change of venue is warranted.

## **CONCLUSION**

Based upon the foregoing, Ambush respectfully requests that the Court grant the Motion, dismissing the Action with prejudice or, in the alternative, transferring the Action to the United States District Court for the District of New Jersey.

**Respectfully submitted,**

In San Juan, Puerto Rico, on March 19th, 2019.

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date I electronically filed this document using the CM/ECF system, which will send a notification of the filing and a copy of this document to all counsel of record.

**/s/ Ángel Sosa**
Ángel Sosa
DC Bar No. 1,000,094
E-mail: asosa@tcm.law

**TORO COLÓN MULLET, P.S.C.**
416 Ponce de León Avenue
Union Plaza, Suite 311
San Juan, Puerto Rico 00918-3430
Tel. (787) 751-8999
Fax: (787) 763-7760
*Attorneys for Defendant Joshua M. Ambush*

motion to dismiss or transfer v7